**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JUAN ENRIQUE GOMEZ ALEJOS,** | § | |
| | § | |
| *Petitioner*, | § | |
| **v.** | § | |
| | § | |
| | § | |
| **DAVID J. VENTURELLA,** *in his official* | § | |
| *capacity as* Senior Official Performing the | § | |
| Duties of the Director of U.S. Immigration | § | |
| and Customs Enforcement; **WARDEN,** | § | |
| Warden of the El Paso Camp East Montana | § | |
| Detention Facility; **JOEL GARCIA,** *in his* | § | **EP-26-CV-00665-DCG** |
| *official capacity as* Field Office Director of | § | |
| U.S. Immigration and Customs Enforcement, | § | |
| El Paso Field Office; **MARKWAYNE** | § | |
| **MULLIN,** *in his official capacity as* | § | |
| Secretary, U.S. Department of Homeland | § | |
| Security; **and TODD BLANCHE,** *in his* | § | |
| *official capacity as* Acting Attorney General | § | |
| of the United States, | § | |
| | § | |
| *Respondents*. | § | |

**<u>ORDER GRANTING PETITION</u>**

Petitioner Juan Enrique Gomez Alejos challenges his immigration detention while the

Government facilitates his removal from the United States.[1]  Among other things, Petitioner

argues that uncertainty regarding when (or whether) the Government will remove him from the

---

[1] *See generally* Pet., ECF No. 1.

country requires his release.[2]  Respondents, on the other hand, insist that Petitioner's continued detention is lawful.[3]

For the following reasons, the Court **GRANTS** the Petition **IN PART** and **ORDERS** Respondents to release Petitioner from custody.

## I.       INTRODUCTION

Petitioner is a Mexican citizen who first entered the United States without inspection in or around 1999.[4]  In 2003, the Government encountered Petitioner after he was arrested for forgery.[5]  After taking custody of Petitioner, the Government placed him in removal proceedings, and an Immigration Judge (an "IJ") ordered him removed on December 1, 2003.[6] The Government removed Petitioner nine days later.[7]

Since then, Petitioner has reentered the United States three separate times.[8]  Petitioner's first two reentries—in 2004 and 2006—both resulted in the Government apprehending him, reinstating his removal order, and removing him to Mexico.[9]  In 2012, Petitioner reentered the

---

[2] *See* Pet. at 13–15.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[3] *See generally* Resp'ts' Resp., ECF No. 6.

[4] *See* Pet. at 2 ("Petitioner first entered the United States from Mexico without inspection in 1998 or 1999 . . . ."); Urquidi Decl., ECF No. 6-1, at 2 ("[Petitioner] entered the United States illegally on or about July 4, 1999 . . . .").

[5] *See* Pet. at 2; Urquidi Decl. at 2.

[6] *See* Pet. at 2; Urquidi Decl. at 2.

[7] *See* Urquidi Decl. at 2.

[8] *See id*. at 2–3.

[9] *See id*.

United States for a third time.[10]  Although the Government ultimately apprehended him again

after his arrest in October 2017,[11] this time it couldn't remove him to Mexico.[12]   That's because,

on May 18, 2018, an IJ granted Petitioner withholding of removal,[13] which prohibits the

Government from removing him to Mexico.[14]

Rather than remove Petitioner to a third country—that is, a country other than Mexico—

the Government released him under an order of supervision (an "OSUP") on June 22, 2018.[15]

And for over seven years, Petitioner periodically checked in with immigration officials in

accordance with his OSUP.[16]  On January 9, 2026, however, the Government revoked

---

[10] *See* Pet. at 2.

[11] Specifically, Petitioner was "arrested in Minneapolis and charged with first-degree . . . burglary and assault."  *Id*. at 2–3.  "Pursuant to a plea agreement," however, "Petitioner pleaded guilty to the lesser offense of stalking."  *Id.* at 3.

[12] *See id.* at 2–3; Urquidi Decl. at 3.

[13] *See* Withholding of Removal, ECF No. 1-1; Urquidi Decl. at 3.

According to Petitioner, he fled Mexico at about age 15 "after experiencing threats, physical assault, and severe discrimination because of his sexual orientation."  Pet. at 2.

[14] *See, e.g.*, *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 492 (5th Cir. 2015) (observing that "withholding of removal (as well as [Convention Against Torture ("CAT")] protection) prevents an alien from being returned to the place of danger").

*See also Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (explaining that "a grant of withholding does not prevent the [Government] from removing an alien to a country other than the one to which removal has been withheld" (citation modified)).

[15] *See* Pet. at 3; Urquidi Decl. at 3.

*See generally also* 8 C.F.R. § 241.4 (contemplating circumstances under which the Government may release aliens from post-removal order detention).

[16] *See* Pet. at 3 ("Petitioner complied with all reporting requirements, remained law abiding, completed his probation, and secured valid employment authorization.").

Petitioner's OSUP and re-detained him to execute his removal.[17]  Yet, over half a year later, Respondents still haven't specified the country to which the Government plans to remove him.[18]

Petitioner now seeks a writ of habeas corpus, arguing that these circumstances require his release.[19]  The Court agrees.

## II.    LEGAL STANDARD

28 U.S.C. § 2241 allows alien detainees to challenge their detention as unlawful by filing a petition for a writ of habeas corpus.[20]  To obtain their release, aliens must show—by a preponderance of the evidence[21]—that they are "in custody in violation of the Constitution or laws or treaties of the United States."[22]

---

[17] *See* Urquidi Decl. at 3.

[18] *See* Pet. at 4 ("Upon information and belief, ICE officers informed Petitioner that they intended to remove him to El Salvador or Honduras; however, ICE has not informed Petitioner whether either country has agreed to accept him.").

*See also, e.g.*, Resp'ts' Resp. at 13 (indicating that "[Enforcement and Removal Operations] is working diligently to remove Petitioner to ***a safe third country***" (emphasis added)).

[19] Although Petitioner argues that several different legal theories require his release, Pet. at 10–18, this Order focuses on whether his continued detention exceeds the government's authority under 8 U.S.C. § 1231(a)(6).  Because the Court will grant the Petition on that basis, *see generally infra*, it need not address Petitioner's other theories.  *See Fleming v. Collins*, 917 F.2d 850, 852 (5th Cir. 1990) ("Because we grant habeas corpus [relief] . . . on the first ground, we need not reach the other claims [petitioner] raises.").

[20] 28 U.S.C. § 2241(c); *see also Zadvydas*, 533 U.S. at 699 (citing 28 U.S.C. § 2241(c)(3)).

[21] *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

[22] 28 U.S.C. § 2241(c).

## III.    DISCUSSION

### A.    Governing authorities

#### 1.    Section 1231(a)

Section 1231(a) governs detention of aliens ordered removed from the country[23]—including aliens who have their removal orders reinstated after illegally reentering the country.[24] Once a removal order becomes administratively final, Section 1231(a)(1) provides the Government ninety days to secure removal.[25] This is known as the "removal period," during which detention is mandatory under the statute's plain text.[26]

After the removal period expires, Section 1231(a)(6) authorizes the Government to continue detaining certain aliens, including those who (like Petitioner) are inadmissible because they were previously removed from the United States.[27] Section 1231(a)(6), however, doesn't expressly limit how long the Government may detain the specified classes of aliens:

---

[23] *Zadvydas*, 533 U.S. at 682.

[24] *See, e.g.*, *Fuentes-De Canjura v. McAleenan*, No. EP-19-CV-00149-DCG, 2019 WL 4739411, at *5 (W.D. Tex. Sept. 26, 2019) (determining that 8 U.S.C. § 1231(a) is the applicable detention authority for aliens subject to a reinstated removal order).

[25] *See* 8 U.S.C. § 1231(a)(1).

*See also Medina v. Chief Council*, No. 2:25-CV-02623-APG-DJA, 2026 WL 560218, at *2 (D. Nev. Feb. 27, 2026) (observing that "[a] reinstated removal order is administratively final" and concluding that Section 1231(a)(1) mandates detention for ninety days after a removal order is reinstated (citation modified)); *Barrera-Romero v. Cole*, No. 1:16-CV-00148, 2016 WL 7041710, at *4 (W.D. La. 2016) (similar), *report and recommendation adopted sub nom. Barrera Romero v. Warden, Lasalle Det. Facility*, No. 1:16-CV-00148, 2016 WL 7041614 (W.D. La. Dec. 1, 2016).

[26] *See* 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General ***shall*** detain the alien." (emphasis added)); *see also Zadvydas*, 533 U.S. at 683 (2001) ("After entry of a final removal order and during the 90–day removal period, however, aliens must be held in custody . . . .").

[27] *See infra* note 28 and accompanying text.

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, ***may be detained beyond the removal period*** and, if released, shall be subject to . . . terms of supervision . . . .[28]

### 2.    *Zadvydas v. Davis*

That doesn't mean that the Government's Section 1231(a)(6) detention authority is unlimited, though.  In *Zadvydas v. Davis*, the Supreme Court considered whether Section 1231(a)(6) vests the Government with unfettered discretion over whether and how long to continue detention.[29]  There, the Government continued detaining two aliens past the removal period based on the criminal histories that precipitated their removal orders.[30]  The Government, however, hadn't been able to find a country willing to accept either of them, which resulted in their prolonged detentions without a foreseeable end in sight.[31]

Although the Supreme Court acknowledged that Section 1231(a)(6) doesn't expressly limit the duration of detention, it nonetheless construed the statute to contain implicit limits.[32]  Specifically, the Supreme Court "detected ambiguity in the statutory phrase 'may be detained,'" concluding that "while 'may' suggests discretion, it does not necessarily mean unlimited

---

[28] *See* 8 U.S.C. § 1231(a)(6) (emphasis added).

*See also id.* § 1182(a)(9) (deeming "inadmissible" certain aliens who have previously been removed from the United States).

[29] *Zadvydas*, 533 U.S. 678.

[30] *See id*. at 684–86.

[31] *See id.*

[32] *See id*. at 682.

*Cf. Miller v. French*, 530 U.S. 327, 336 (2000) ("[W]here Congress has made its intent clear, 'we must give effect to that intent.'" (quoting *Sinclair Refin. Co. v. Atkinson,* 370 U.S. 195, 215 (1962))).

discretion."[33]  The Supreme Court further reasoned that "if Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms."[34]

Having determined that Section 1231(a)(6) is ambiguous, the Supreme Court weighed competing interpretations of Section 1231(a)(6)'s detention authority.  The Government's interpretation would have authorized indefinite detention[35]—which, according to the Supreme Court, would raise a "serious constitutional problem."[36]  As the Supreme Court had previously explained, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."[37]  Applied to Section 1231(a)(6):

(1)     the statute's "basic purpose" is to "assur[e] the alien's presence at the moment of removal"; and

(2)     if it's unlikely that the Government will be able to remove an alien within the foreseeable future, detaining that alien under Section 1231(a)(6) wouldn't serve that purpose; so

---

[33] *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (citing *Zadvydas*, 533 U.S. at 697).

[34] *Zadvydas*, 533 U.S. at 697 ("[I]f Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms.").

[35] *Id.* at 692.

[36] *Id*. at 690.

*See also Jennings*, 583 U.S. at 296 ("When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932))).

[37] *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."); *see also Zadvydas*, 533 U.S. at 690 (indicating that *Jackson* applies in the immigration detention context).

(3)    interpreting Section 1231(a)(6) to authorize the Government to detain aliens whose removals aren't foreseeable would raise serious constitutional questions.[38]

To avoid those constitutional questions, the Supreme Court construed Section 1231(a)(6) to limit detention to a "reasonable time."[39]  As for what constitutes a "reasonable time," the Supreme Court determined that detention is "presumptively reasonable" for six months.[40]  After that 6–month period, "if the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either rebut that showing or release the alien."[41]

### 3.    8 C.F.R. § 241.13

After *Zadvydas*, the Government incorporated the Supreme Court's guidance into 8 C.F.R. § 241.13.  That regulation (which now governs the Government's removal operations) recognizes that detention under Section 1231(a)(6) requires a "significant likelihood that the alien will be removed in the reasonably foreseeable future."[42]

Notably, 8 C.F.R. § 241.13 also places limits on *re*-detention.  Again incorporating *Zadvydas*'s foreseeability criteria, the regulation instructs that the Government may "revoke an alien's release . . . and return the alien to custody if, on account of changed circumstances, the

---

[38] *Zadvydas*, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").

[39] *Id.* at 689.

[40] *Id.* at 701.

[41] *Jennings*, 583 U.S. at 296 (citation modified); *see also Zadvydas*, 533 U.S. at 699 ("Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

[42] *See generally* 8 C.F.R. § 241.13.

[Government] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."[43]

### B.      Petitioner's continued detention isn't presumptively reasonable

To determine whether Section 1231(a)(6) authorizes Petitioner's continued detention, the Court must first assess whether his detention is presumptively reasonable.  Here, the Government re-detained Petitioner over six months ago, and (as far as the record reflects) he has remained in immigration detention ever since.[44]  *Zadvydas*'s six-month period has therefore passed, and Petitioner's continued detention isn't presumptively reasonable.[45]

### C.      Petitioner's removal isn't significantly likely in the reasonably foreseeable future

Having determined that Petitioner's detention isn't presumptively reasonable, the Court must now consider whether Petitioner's removal is foreseeable.  Under *Zadvydas*, aliens typically bear the initial burden of providing good reason to believe that there ***isn't*** a significant likelihood of removal in the reasonably foreseeable future.[46]  Some courts, however, have concluded that where (as here) the Government re-detains an alien after revoking their release,

---

[43] *Id.* § 241.13(i)(2); *see also Kong v. United States*, 62 F.4th 608, 619 (1st Cir. 2023) ("ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." (citing 8 C.F.R. § 241.13(i)(2))).

[44] *See* Pet. at 3; Urquidi Decl. at 3.

[45] *See supra* notes 40–41 and accompanying text.

[46] *See supra* note 41 and accompanying text.

8 C.F.R. § 241.13(i)(2) applies and shifts the burden to **Respondents** to show that such a likelihood of removal **does** exist.[47]

The Court need not resolve which burden-shifting framework applies to *Zadvydas* claims involving re-detention—even if *Zadvydas*'s burden-shifting framework (*i.e.*, the framework that is less favorable to Petitioner) applied, Petitioner's continued detention is unreasonable and no longer authorized under Section 1231(a)(6).

### 1.    Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future

Under *Zadvydas*'s burden-shifting framework, Petitioner would first need to provide good reason to believe that there isn't a significant likelihood of removal in the reasonably foreseeable future.[48]  While "'[g]ood reason' is not an onerous standard,"[49] it requires more than just "conclusory statements suggesting that he will not be immediately removed."[50]

Petitioner notes that he "has been granted withholding of removal to Mexico—the only country in which he has lawful status."[51]  The effect of that withholding is to prohibit the Government from removing him to Mexico without first "obtain[ing] an order from the

---

[47] *See, e.g.*, *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("[U]pon revocation of supervised release, it is the [Government's] burden to show a significant likelihood that the alien may be removed."); *accord Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1164 (E.D. Cal. 2025).

[48] *Zadvydas*, 533 U.S. at 701.

[49] *See Mogos v. Thompson*, No. 5:26-CV-0740-JKP, 2026 WL 475079, at *4 (W.D. Tex. Feb. 13, 2026).

[50] *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006).

[51] *See* Pet. at 13–14.

immigration court lifting or terminating the withholding grant."[52]  As far as the record reflects,
the Government hasn't attempted to terminate the withholding,[53] so the Government may only
remove Petitioner to a third country.[54]

Over eight years have now passed since the IJ granted Petitioner withholding of removal
to Mexico.[55]  Yet, as Petitioner points out, the Government has "identifie[d] no accepting
country, no travel document, no diplomatic assurance, no scheduled removal, and no meaningful
progress toward third-country removal."[56]  The Court finds that the apparent lack of progress
towards third-country removal efforts provides good reason to doubt that Petitioner's removal is
significantly likely in the reasonably foreseeable future.[57]

**2.      Respondents have failed to rebut Petitioner's showing**

Respondents, by contrast, haven't offered anything to suggest that Petitioner's removal is
more foreseeable now than it's been at any point since the IJ granted Petitioner withholding of

---

[52] *See id*. at 14 (citing 8 C.F.R. § 1208.24(f)).

*See also supra* note 14 and accompanying text.

[53] *See* Pet. at 13–14; *see generally also* Resp'ts' Resp.

[54] *See supra* note 14 and accompanying text.

[55] *See supra* note 13 and accompanying text.

*See also Villanueva*, 801 F. Supp. 3d at 704 (determining that removal wasn't "reasonably likely in the foreseeable future" where the Government still hadn't identified a third country to which to remove an alien eight years after an IJ granted the alien withholding of removal to Mexico).

[56] *See* Reply, ECF No. 7, at 1–2.

[57] *See, e.g.*, *Mogos*, 2026 WL 475079, at *5 (finding that a petitioner's removal wasn't reasonably foreseeable where there was "no stated progress on such removal during the [p]etitioner's continued detention"); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 722–23 (W.D. Wash. 2025) (determining that a petitioner carried his burden where "the process for procuring travel documents . . . continue[d] to be uncertain and protracted").

removal.[58]  In fact, Respondents haven't even identified a country to which they plan to remove Petitioner.[59]

At this stage, it remains uncertain whether Petitioner's removal is possible—let alone significantly likely in the reasonably foreseeable future.[60]  Section 1231(a) doesn't authorize Respondents to detain Petitioner indefinitely while they pursue a removal that may never happen.[61]  Under these circumstances, Petitioner's continued detention is unreasonable and no longer authorized by statute.[62]

---

[58] *Cf.* Pet. at 14 (observing that "[d]uring the more than eight years since [the IJ granted Petitioner withholding of removal], the government's efforts to effectuate removal have . . . been unsuccessful").

[59] *See generally* Resp'ts' Resp.; Urquidi Decl.

[60] *See, e.g.*, *Gomez-Simeon v. Bondi*, No. SA-25-CV-01460-JKP, 2025 WL 3470872, at *4 (W.D. Tex. Nov. 24, 2025) (determining that there wasn't a substantial likelihood that an alien would be removed in the reasonably foreseeable future where the Government "ha[d] not found a [third] country to take" the alien); *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *10 (S.D. Tex. Oct. 16, 2025) (finding that "the Government ha[d]n't demonstrated that there is *any* likelihood of removal, much less a *significant* one" where the Government failed to identify a third country willing to accept the petitioner or present evidence that such an occurrence was likely).

*See also Yakoub v. Marin*, No. 5:26-CV-01399-JAK (RAOX), 2026 WL 922015, at *6 (C.D. Cal. Mar. 31, 2026) ("In third country removal cases, 'removal cannot be deemed as likely to occur in the reasonably foreseeable future if the government cannot identify a country that will accept the noncitizen.'" (quoting *L.R. v. Noem*, No. 25-CV-2019, 2026 WL 161605, at *10 (D. Nev. Jan. 21, 2026))).

[61] *See Zadvydas*, 533 U.S. at 689.

[62] *Id.* at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

**D.     Scope of Habeas Relief**

Because Petitioner's continued detention isn't authorized by Section 1231(a)(6), the Court will order his release.[63] *Zadvydas*, however, counsels that "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances."[64]  The Court therefore directs Respondents to release Petitioner under a form of supervised release that accounts for his history of compliance (or non-compliance) with prior OSUP(s).

Respondents may continue to facilitate removal while Petitioner is released under supervision.  However, Respondents may only re-detain Petitioner under the authority of Section 1231(a)(6) in accordance with the procedures set forth under 8 C.F.R. §§ 241.4(*l*), 241.13(i).[65]

**IV.     CONCLUSION**

For the foregoing reasons, the Court finds that Petitioner Juan Enrique Gomez Alejos has shown by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."[66]

---

[63] *See Jennings*, 583 U.S. at 299 ("[I]f the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien." (quoting *Zadvydas*, 533 U.S. at 701)).

The *Zadvydas* Court concluded that release (as opposed to a bond hearing, for example) was the proper remedy even though the subject aliens had criminal histories.  *See Zadvydas*, 533 U.S. at 684 (detailing Kestutis Zadvydas's criminal history); *id.* at 685–86 (detailing Kim Ho Ma's criminal history); *id.* at 701 (determining that release was the proper remedy for both).  The Court therefore concludes that release is the proper remedy here despite Petitioner's criminal history.  *See supra* notes 5 & 11 and accompanying text.

[64] *Zadvydas*, 533 U.S. at 700.

[65] *See* 8 C.F.R. § 241.4(*l*) (identifying the process by which the Government may revoke an alien's OSUP where the alien has violated their conditions of release); 8 C.F.R. § 241.13(i)(3) (identifying the process by which the Government may revoke an alien's OSUP to execute removal).

[66] *See supra* notes 21–22 and accompanying text.

The Court therefore **GRANTS** Petitioner Juan Enrique Gomez Alejos's Petition for Writ of Habeas Corpus (ECF No. 1) **IN PART** to the extent he seeks an Order requiring Respondents to (1) release him under an OSUP; (2) return his personal property upon release; and (3) follow applicable procedures if the Government desires to revoke his OSUP in the future.[67]

The Court thereby **ORDERS** Respondents to **RELEASE** Petitioner from immigration detention **UNDER SUPERVISION** on or before August 6, 2026.

The Court further **ORDERS** Respondents to notify the Court of Petitioner's release **by 5:00 PM Mountain Time on August 7, 2026**.

The Court further **ORDERS** Respondents to **RETURN** Petitioner's property (including identification, immigration papers, cellphone, money, keys, and any other personal effects).

The Court further **ORDERS** that Respondents may only re-detain Petitioner under the authority of Section 1231(a)(6) in accordance with the procedures set forth under 8 C.F.R. §§ 241.4(*l*), 241.13(i).

The Court **DENIES** the Petition **IN PART** to the extent it seeks an Order requiring Respondents to provide notice of the Government's intent to remove Petitioner to a third country beyond what the law already prescribes.[68]

---

[67] *See* Pet. at 18–19.

[68] *See, e.g.*, 8 C.F.R. § 241.13(i)(3) (requiring the Government to provide Petitioner with notice and an opportunity to be heard should it wish to revoke his OSUP to remove him to a third country); *Zawu Roberts v. De Anda-Ybarra*, No. EP-26-CV-00377-DCG, 2026 WL 1459725, at *8 (W.D. Tex. May 22, 2026) (Guaderrama, J.) (explaining that "[a]liens are entitled to an opportunity to seek withholding under 8 U.S.C. § 1231(b)(3) and CAT" before the Government removes them).

The Court further **DENIES** Petitioner's "Emergency Motion for a Temporary Restraining Order and Preliminary Injunction Ordering His Release" (ECF No. 8)—in which he asked the Court to (1) order his release, (2) prohibit Respondents from transferring him during the pendency of this case, and (3) require Respondents to provide advance notice of any attempted third-country removal—because:

(1)     the Court has already ordered Petitioner's release;[69]

(2)     an effect of Petitioner's release is to moot his request that the Court enjoin Respondents from transferring him while this case is pending;[70] and

(3)     the Court has declined to impose notice requirements beyond those already set forth by law.[71]

Finally, the Court **SUBSTITUTES**:

(1)     David J. Venturella, Senior Official Performing the Duties of the Director of ICE, in Former Acting Director Todd Lyons's place;

(2)     Markwayne Mullin, Secretary of the Department of Homeland Security, in Former Secretary Noem's place; and

(3)     Todd Blanche, Acting Attorney General of the United States, in Former Attorney General Bondi's place

as named Respondents in this case.[72]

---

[69] *See Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) ("Generally, a request for an injunction is moot upon the happening of the event sought to be enjoined." (citation modified)).

[70] *Cf. Reyes v. Tate*, No. 4:26-CV-2682, 2026 WL 1459046, at *1 (S.D. Tex. 2026) ("When a petitioner is no longer in custody and the Court can no longer grant effective relief, a habeas petition becomes moot." (citation modified)), *report and recommendation adopted by* No. 4:26-CV-02682, 2026 WL 1458322 (S.D. Tex. May 21, 2026); *Salgado v. Fed. Bureau of Prisons*, 220 F. App'x 256, 257 (5th Cir. 2007) ("[A]n action is moot when the court cannot grant the relief requested by the moving party." (first citing *Bailey v. Southerland,* 821 F.2d 277, 278 (5th Cir. 1987); and then citing *Willy v. Administrative Review Board,* 423 F.3d 483, 494 n. 50 (5th Cir. 2005))).

[71] *See supra* note 68 and accompanying text.

[72] *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's

So **ORDERED** and **SIGNED** this 3rd day of August 2026.

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

successor is automatically substituted as a party.  Later proceedings should be in the substituted party's name . . . . The court may order substitution at any time . . . .").